UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KYLE POND,

                Plaintiff,

v.                                       Case No:   6:19-cv-1975-Orl-37EJK

RED LAMBDA, INC. and BAHRAM
YUSEFZADEH,

                Defendants.
_____/

## REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Renewed Joint Motion to Approve the Settlement Agreement and Dismiss the FLSA Claim with Prejudice (the "Renewed Motion"), filed July 30, 2020. (Doc. 27.) Upon consideration, I respectfully recommend that the Motion be granted.

## I.      BACKGROUND

In May 2019, Plaintiff, Kyle Pond, initiated this case against Defendants, Red Lambda, Inc. ("RLI") and Bahram Yusefzadeh, alleging claims for breach of contract (only as to RLI, Count I) and unpaid minimum wages pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219 (2018) (as to both Defendants, Count II). (Doc. 1-1.) The case began in the Circuit Court for the Eighteenth Judicial Circuit, in and for Seminole County, Florida, but RLI removed the case to this Court on October 16, 2019, with Yusefzadeh's consent. (Doc. 1.)

In the Complaint, Plaintiff alleges that he began working for RLI in January 2016 as a salaried Director of Business Development. (Doc. 1-1, ¶¶ 14; Ex. A, Doc. 1-1 at 12–13.) Yusefzadeh was Plaintiff's supervisor. (Doc. 17 at 1.) Plaintiff asserts that RLI failed to pay him nearly $108,000 pursuant to his employment agreement and failed to pay him at a rate of at least

the federal minimum wage for an intermittent period of time between April 2018 and December 2018. (Doc. 1-1, ¶¶ 15, 18; Doc. 19, ¶ 2.) Defendant, RLI, answered the Complaint on November 1, 2019. (Doc. 16.) Defendant, Yusefzadeh, proceeding *pro se*, has not answered the Complaint to date.

In their first Joint Motion to Approve FLSA Settlement Agreement ("Initial Motion") (Doc. 17), the parties petitioned the Court to approve the Settlement Agreement and Release ("Agreement") (Doc. 17-1) the parties reached on Plaintiff's FLSA minimum wage claim (Count II) on November 20, 2019. The undersigned denied the Initial Motion due to concerns regarding the amount of liquidated damages to be paid to Plaintiff and the general nature of the release at issue. (Doc. 21.) The parties have now filed the instant Motion for approval of their Agreement (Doc. 27), with the addition of an amendment thereto (the "Amendment") (Doc. 27-1).[1] The parties have entered into a separate, confidential settlement agreement on Plaintiff's contract claim against RLI (Count I) (Doc. 19, ¶ 3; 20) (which did not require Court approval), and the District Court subsequently dismissed that claim with prejudice (Doc. 22).

## II.    STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable

---

[1] The undersigned required the parties to re-submit the Motion and Amendment, because Yusefzadeh had previously not signed either document. (Docs. 25, 25-1, 26.)

to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect

> a reasonable compromise over issues, such as FLSA coverage or
> computation of back wages, that are actually in dispute; we allow
> the district court to approve the settlement in order to promote the
> policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers both whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hyrdradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

## III.   DISCUSSION

### A.   Settlement Sum

According to the Settlement Agreement (Doc. 17-1, ¶ 2) and the separately filed Joint Notice (Doc. 19), Defendants have agreed to pay Plaintiff a total amount of $10,000 in full satisfaction of his FLSA minimum wage claim in Count II. The parties settled this case prior to Plaintiff's answering the Court's interrogatories. Therefore, in the Joint Notice, the parties informed the Court that Plaintiff originally claimed 1,240 hours of unpaid minimum wages. (Doc.

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981 are binding on the Eleventh Circuit).

19, ¶ 2). Using the hourly rate of $8.25, the federal minimum wage in Florida during the applicable timeframe in 2018, Plaintiff originally claimed entitlement to $10,230.00 in unpaid wages. (*Id.*) Because Plaintiff will receive less (although not by much) than the amount to which he claimed he was entitled under the FLSA, he has compromised his claim within the meaning of *Lynn's Food*, 679 F.2d at 1354–55.

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wage and unpaid overtime compensation plus an additional, equal amount, as liquidated damages. Title 29 U.S.C. § 216(b) ("Any employer who violates the provisions of [the FLSA] shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."). In the Order denying without prejudice the parties' Initial Motion, the undersigned questioned what portion of the $10,000 payment to Plaintiff amounted to liquidated damages, as neither the Agreement nor the Motion specifically addressed that issue. (Doc. 21 at 4–5.)

In the instant Motion, the parties clarify that the "settlement of the contract wages claim in Count I captures and includes the straight minimum wages Plaintiff sought in Count II," and because the confidential settlement of Count I exceeds $10,000, Plaintiff has been compensated for his FLSA wage claim in the amount of $10,000. (Doc. 27 at 2–3). In other words, the parties represent to the Court that $10,000 of the confidential settlement agreement reached as to Count I was attributable to the unpaid minimum wages owed to Plaintiff in Count II. Thus, the $10,000 being paid to Plaintiff pursuant to the Agreement and Amendment accounts for the equal amount of liquidated damages Plaintiff is owed under the FLSA. (*Id.*)

Because the FLSA prohibits confidential settlement agreements, the parties' method of resolving this FLSA claim certainly was not ideal. *See Dees v. Hydradry, Inc.*, 706 F. Supp. 2d

1227, 1245 (M.D. Fla. 2010). Nevertheless, because the FLSA settlement amount is not confidential and the Agreement and Amendment thereto has been publicly filed, the undersigned accepts the parties' representations that Plaintiff has been adequately compensated in the amount of $10,000 for his FLSA wage claim in Count II (by virtue of the otherwise undisclosed settlement amount reached as to Count I), plus an additional, equal amount of $10,000 in liquidated damages. The parties have memorialized this in their Amendment:

> Pond hereby stipulates that his claim for straight FLSA minimum wages damages in Count II . . . is fully encompassed, captured, and more than satisfied by the parties' separate settlement of Pond's claim against RLI for unpaid contract wages in Count I. As a result, the instant Agreement is attributed to Pond's liquidated minimum wage damages and attorney's fees incurred by Pond in connection with Count II.

(Doc. 27-1, ¶ 2.)

The parties represented in their Initial Motion that they agreed to a settlement of Count II due the burdens and expense of continued litigation. (Doc. 17 at 1.) Plaintiff and RLI are represented by counsel, where as Yusefzadeh is proceeding *pro se*. Given that the parties have represented that Plaintiff is receiving nearly full compensation for his FLSA minimum wage claim, plus an equal amount of liquidated damages, and there is otherwise no apparent fraud or collusion present, the undersigned recommends that the Court conclude the settlement sum is fair and reasonable, and does not otherwise run afoul of the FLSA.

### B. Attorney's Fees

Plaintiff's counsel will receive a total of $5,000 for fees and costs for his representation of Plaintiff. (Doc. 17-1, ¶ 17.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Because the parties represent that this amount was negotiated separately from the amount received by

Plaintiff and the settlement is otherwise reasonable on its face, further review is not required. (Doc. 17 at 5–6); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

### C. Release

In the Amendment, the parties replaced the Release language in the Agreement with the following:

> Pond, on behalf of himself and his spouse, heirs, agents, representatives, assigns, and any other persons or entities acting or purporting to act on behalf of Pond (collectively, the "Pond Releasors"), does hereby knowingly, voluntarily, fully and forever waive, release, and discharge, RLI and each of RLI's parents, subsidiaries, and other affiliated entities, and each of RLI's and its affiliated entities' respective officers, directors, shareholders, predecessors, successors or assign, attorneys, agents and employees, and each of their respective heirs, executors, administrators, personal representatives, successors and/or assigns (collectively, the "RLI Releasees") and Bahram Yusefzadeh ("Yusefzadeh") individually, of and from all known or unknown rights, claims, complaints, demands, charges, liabilities, obligations, promises, agreements, damages, actions and lawsuits of any kind for unpaid wage and house and/or related claims arising solely out of the same facts or circumstances related to those in the above-captioned action.

(Doc. 27-1, ¶ 3.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Judges in this District have found similar releases to the one presented here to pass judicial scrutiny because they do not require Plaintiff to release unknown claims that are *unrelated* to his wage claim in this case. *Dreasher v. Paul E. Walsh Trucking, Inc.*, No. 6:17-cv-1288-Orl-41TBS, 2018 WL 1040000, at *4 (M.D. Fla. Jan. 24, 2018), *report and recommendation adopted as modified*, 2018 WL 1010844 (M.D. Fla. Feb. 22, 2018); *Adams v. Daytona Resort Grp., Inc.*, No. 6:17-cv-1287-Orl-40KRS, 2017 WL 5499785, at *3 (M.D. Fla. Oct. 27, 2017), *report and recommendation adopted*, 2017 WL 5444436 (M.D. Fla. Nov. 14, 2017). Therefore, I recommend that the Court find that the release is narrowly tailored enough to pass judicial scrutiny.

## IV.   RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the Renewed Joint Motion to Approve the Settlement Agreement and Dismiss the FLSA Claim With Prejudice (Doc. 27);

2. **APPROVE** the Settlement Agreement, as amended (Doc. 17-1 & 27-1);

3. **DISMISS WITH PREJUDICE** Count II of Plaintiff's Complaint; and

4. **DIRECT** the Clerk of Court to close the case.

## <u>NOTICE TO PARTIES</u>

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.

**If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on August 3, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party, Bahram Yusefzadeh